THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| FAROOQ NASSERZIAYEE AND LENORE SUPNET, husband and wife, on their own behalf, and on behalf of their daughter, M.N., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>JACK RUGGLES and JANE DOE RUGGLES, husband and wife; ZION CANYON TRAIL RIDES AT JACOB'S RANCH, LLC, a Utah limited liability company; JOSHUA RUGGLES; CLAY DOE,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br>- **DENYING MOTION TO STRIKE AND**<br>- **GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:19-cv-00022-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This case arises out of an alleged accident at Zion Canyon Trail Rides at Jacob's Ranch ("Jacob's Ranch"), a recreational horseback riding facility. Plaintiffs Farooq Nasserziayee ("Nasserziayee") and Lenore Supnet ("Supnet") filed a complaint on behalf of themselves and their daughter, M.N., alleging that M.N. was injured during a horse-riding accident due to the actions of Defendants.

Defendants Zion Canyon Trail Rides at Jacob's Ranch, Jack Ruggles, and Jane Doe Ruggles (collectively "Moving Defendants") moved for summary judgment. They allege that summary judgment is appropriate because (1); no reasonable factfinder could find gross negligence; (2) Plaintiffs assumed the risk of injury; (3) no reasonable fact finder could find negligent infliction of emotional distress; and (4) no reasonable fact finder could find intentional infliction of emotional distress. For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

**Contents**
Background ........................................................................................................................... 2
    A Prior Ruling Eliminated Some Claims ............................................................... 3
    This Motion for Summary Judgment ..................................................................... 3
Undisputed Material Facts ................................................................................................... 4
Discussion ............................................................................................................................ 6
    Defendant's Motion to Strike is Denied ................................................................. 6
    Defendants' Motion for Summary Judgment Will be Granted in Part and Denied in Part  8
        A Reasonable Factfinder Could Conclude Defendants Were Grossly Negligent ... 9
        Assumption of Risk Does Not Bar Plaintiffs' Negligence Claims ....................... 13
    The Prior Ruling Granted Summary Judgment on the  Negligent Infliction of Emotional Distress Claim ............................................................................................................... 16
    Summary Judgment Will be Granted on the  Intentional Infliction of Emotional Distress Claim ............................................................................................................................. 17
Conclusion and Order ........................................................................................................ 18

## BACKGROUND

On March 4, 2020, Nasserziayee and Supnet filed a complaint alleging their minor daughter, M.N., was badly injured in a March 21, 2016, fall off of a horse at Jacob's Ranch.[1] The complaint asserted claims for negligence, gross negligence, infliction of emotional distress, and negligent infliction of emotional distress against Jacob's Ranch, Jack Ruggles, and Jane Doe Ruggles.[2] In April 2020, Plaintiffs filed an amended complaint, which added identical claims against Joshua Ruggles and Clay Doe, and alleged, "[b]ased on the statements of Defendant Jack ("Pappy") Ruggles and Defendant Jacobs Ranch," that Joshua Ruggles and Clay Doe were independent contractors.[3]

---

[1] Complaint, docket no. 2, filed March 4, 2019.

[2] *Id*. at 3-4.

[3] First Amended Complaint, docket no. 33, filed April 14, 2020, at 3-4.

## A Prior Ruling Eliminated Some Claims

In October 2020, Defendants filed a Motion to Dismiss and for Summary Judgment[4], which was granted in part and denied in part ("Prior Ruling").[5] The Prior Ruling granted summary judgment for Defendants on the claims for ordinary negligence and negligent infliction of emotional distress, based on the Release Plaintiffs signed prior to the horseback ride.[6] However, the Prior Ruling denied summary judgment on the claims for gross negligence and intentional infliction of emotional distress because those claims were not barred by the Release.[7] The Prior Ruling also found there was sufficient evidence to support a claim for gross negligence, because there were disputed facts not amendable to resolution based on the record at the time. Specifically, the Prior Ruling noted that Plaintiffs had submitted evidence that helmets were not made available to the group, and the horses were at one point encouraged to go faster, even though they were carrying inexperienced riders. The Prior Ruling concluded that this evidence, if believed by a jury, could support a finding of gross negligence against Jack Ruggles, Jane Doe Ruggles, and Jacob's Ranch.[8]

## This Motion for Summary Judgment

On September 16, 2021, Moving Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC filed this motion for summary judgment on all remaining issues ("Motion"), which is resolved in this ruling.[9] Plaintiffs filed a response on

---

[4] Motion to Dismiss and for Summary Judgment by Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC, docket no. 38, filed October 30, 2020.

[5] *Nasserziayee v. Ruggles*, No. 4:19-CV-00022 DN PK, 2021 WL 778603 (D. Utah Mar. 1, 2021).

[6] *Id*. at *4.

[7] *Id*.

[8] *Id*. at *5.

[9] Docket no. 63, filed September 16, 2021.

3

October 14 ("Response"),[10] and a supplemental response on October 28, 2021 ("Supplemental Response").[11] Moving Defendants filed a reply on October 28, 2021("Reply').[12]

On November 3, 2021, Moving Defendants moved to strike Plaintiffs' Supplemental Response, arguing it was untimely filed.[13] Plaintiffs filed an opposition to the Motion to Strike on November 15, 2021.[14] On November 17, 2021, a docket text order was entered construing the opposition as a motion under Federal Rules of Civil Procedure 6(b) and directing Defendants to file a further reply.[15] Defendants did so on November 29, 2021.[16]

## UNDISPUTED MATERIAL FACTS

1.  On March 21, 2016, Plaintiffs Farooq Nasserziayee, Lenore Supnet, and their daughter M.N. went horseback riding at Jacob's Ranch.[17]

2.  Prior to the start of the ride, Supnet signed a liability waiver (the "Release") on behalf of her, Nasserziayee, and M.N.[18]

3.  The Release contained the following relevant language:

---

[10] Plaintiffs' Response to Defendants Ruggles' and Zion Canyon Trail Rides at Jacob's Ranch, LLC's Motion for Summary Judgment on All Remaining Issues, docket no. 68, filed October 14, 2021.

[11] Plaintiffs' Supplemental Response to Defendants Ruggles' and Zion Canyon Trail Rides at Jacob's Ranch, LLC's Motion for Summary Judgment on All Remaining Issues, docket no. 70, filed October 28, 2021.

[12] Defendants' Reply Memorandum Supporting Motion for Summary Judgment by Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC on All Remaining Issues, docket no. 71, filed October 28, 2021.

[13] Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC Motion to Strike Docket Document Nos. 70 and 70-1 ("Motion to Strike), docket no. 72, filed November 3, 2021.

[14] Plaintiff's Response to Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC Motion to Strike Docket Document Nos. 70 and 70-1, docket no. 75, filed November 15, 2021.

[15] Docket no. 77, filed November 17, 2021.

[16] Defendants' Supplemental Reply Memorandum Supporting Motion for Summary Judgment by Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC on All Remaining Issues, docket no. 78, filed November 29, 2021.

[17] Motion at 4, Statement of Undisputed Facts at ¶1; Opposition at 3-4.

[18] *Id*.

INHERENT RISKS/ASSUMPTION OF RISKS: I ACKNOWLEDGE THAT: Horseback riding is classified as RUGGED ADVENTURE RECREATIONAL SPORT ACTIVITY & that risks, conditions, & dangers are inherent in (meaning an integral part of) horse/equine/animal activities regardless of all feasible safety measures which can be taken & I agree to assume them. The inherent risks include, but are not limited to any of the following: The propensity of an animal to behave in ways that may result in injury, harm, death, or loss to persons on or around the animal. The unpredictability of an equine's reaction to sounds, sudden movement, unfamiliar objects, persons, or other animals. Hazards including but not limited to surface or subsurface conditions. A collision, encounter and/or confrontation with another equine, another animal, a person or an object. The potential of an equine activity participant to act in a negligent manner that may contribute to injury, harm, death, or loss to the participant or to other persons, including but not limited to failing to maintain control over an equine and/or failing to act within the ability of the participant . . . . I also acknowledge that these are just some of the risks & I agree to assume others not mentioned above.

. . .

I/WE AGREE THAT: I for myself & on behalf of my child and/or legal ward have been fully warned & advised by THIS STABLE that protective headgear/helmet, which meets or exceeds the quality standards of the SEI CERTIFIED ASTM STANDARD F 1163 Equestrian Helmet should be worn while riding, handling and/or being near horses & I understand that the wearing of such headgear/helmet at these times may reduce severity of some of the wearer's head injuries & possibly prevent the wearer's death from happening as the result of a fall & other occurrences. I/WE ACKNOWLEDGE THAT: THIS STABLE has offered me, & my child and/or legal ward if applicable, protective headgear/helmet that meets or exceeds the quality standards of the SEI CERTIFIED ASTM STANDARD F 1163 Equestrian Helmet. I/WE ACKNOWLEDGE THAT: Once provided, if I choose to wear the protective headgear/helmet offered that I/WE will be responsible for properly securing the headgear/helmet on the participant's head at all times. I am not relying on THIS STABLE and/or its associates to check any headgear/helmet strap that I may wear, or to monitor my compliance with this suggestion at any time now or in the future.

. . .

I AGREE THAT [i]n consideration of THIS STABLE allowing my participation in this activity, under the terms set forth herein, I for myself and on behalf of my child and/or legal ward, heirs, administrators, personal representatives or assigns, do agree to release, hold harmless, and discharge THIS STABLE, its owners, agents, employees, officers, directors, representatives, assigns, members, owners of premises and trails, affiliated organizations, and Insurers, and others acting on their behalf (hereinafter, collectively referred to as "Associates"), of and from all claims, demands, causes of action and legal liability, whether the same be known or unknown, anticipated or unanticipated, due to

> THIS STABLE'S and/or ITS ASSOCIATE'S ordinary negligence or legal liability; and I do further agree that except in the event of THIS STABLE'S gross negligence and/or willful and/or wanton misconduct, I shall not bring any claims, demands, legal actions and causes of action, against THIS STABLE and ITS ASSOCIATES as stated above in this clause, for any economic or non-economic losses due to bodily in[j]ury and/or death and/or property damage, sustained by me and/or my minor child or legal ward in relation to the premises and operations of THIS STABLE, to include while riding, handling, or otherwise being near horses owned by me or owned by THIS STABLE, or in the care, custody or control of THIS STABLE, whether on or off the premises of THIS STABLE, but not limited to being on THIS STABLE'S premises.[19]

4.  Plaintiffs allege that at some point during the ride, M.N. fell off her horse and was injured.[20]

## DISCUSSION

### Defendant's Motion to Strike is Denied

Defendants moved to strike Plaintiffs' Supplemental Response under Fed. R. Civ. P. 6, arguing it was filed untimely.[21] Although Defendant is correct that the Supplemental Response was filed untimely, the Motion to Strike will be denied.

DuCivR 7(1)(b)(3)(a) requires a party responding to a motion for summary judgment to file the response within 28 days of service.[22] Plaintiffs do not dispute that the Supplemental Response was filed more than 28 days after the Motion was served. Therefore, the Supplemental Response was filed untimely.

Rule 6 of the Federal Rules of Civil Procedure allows for an extension of a deadline after the deadline has passed. The United States Supreme Court has instructed courts that "any

---

[19] Motion at 4-5, Statement of Undisputed Facts at ¶2; Opposition at 4-6.

[20] Motion at 10, Statement of Undisputed Facts at ¶20.

[21] Motion to Strike at 2.

[22] DuCivR 7-1.

6

postdeadline extension [under Rule 6] must be on 'upon motion made' . . . ."[23] However, Rule 6(b)(1) should be "liberally construed to advance the goal of trying each case on the merits."[24] *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. McKee*[25] construed an opposition to a motion to strike as a "motion made" under Rule 6(b). For the same reasoning, the Supplemental Response is construed as a motion under Rule 6(b). Like the opposition in *Ute Indian Tribe*, the Supplemental Response contains a high degree of formality and precision, and presents arguments for an extension under Rule 6. Defendants have been noticed of and were permitted to respond to Plaintiffs' arguments in the form of a reply. Therefore, the filing will be accepted if Plaintiffs have demonstrated excusable neglect.

When considering whether a Rule 6(b)(1) movant has shown excusable neglect, a court should consider (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and any impact it may have on judicial proceedings; (3) the reason for the delay, including whether it was within reasonable control of the movant; and (4) whether the movant acted in good faith (the "*Pioneer* factors").[26] Defendants filed their Motion for Summary Judgment on September 16, which included three new affidavits which Plaintiffs claim had not been disclosed to them prior to the Motion's filing.[27] Plaintiffs filed a timely response on October 14[28], and then a supplemental response on October 28, which included a new affidavit from Mike Pelly, who

---

[23] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 873 (1990).

[24] *Rachel v. Troutt*, 820 F.3d 390, 394 (10th Cir. 2016).

[25] No. 2:18-CV-00314 CW, 2019 WL 1931713, at *4 (D. Utah May 1, 2019).

[26] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

[27] Plaintiff's Response to Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC Motion to Strike Docket Document Nos. 70 and 70-1 at 2.

[28] Plaintiffs' Response to Defendants Ruggles' and Zion Canyon Trail Rides at Jacob's Ranch, LLC's Motion for Summary Judgment on All Remaining Issues.

7

was in the riding party when M.N. was allegedly injured.[29] Plaintiffs assert the reason for the late filing of the supplemental affidavit was that due to Defendants' recent disclosure of new evidence, they were "put in the position of having to investigate, contact witnesses, and obtain refuting Affidavits on short notice." and they were unable to obtain the Pelly affidavit prior to October 28.[30]

While Plaintiffs should have filed a motion to extend time, their actions are excusable under the circumstances. There is little danger of prejudice to Defendants, as they were able to respond to Plaintiffs' arguments concerning the supplemental affidavit in a Supplemental Reply.[31] The length of the delay was only a matter of weeks, which courts have typically found to not be substantial, and will have minimal impact or delay on trial.[32] And all indications are that Plaintiffs acted in good faith. At least three of the four *Pioneer* factors favor a finding of excusable neglect. Accordingly, Defendants' Motion to Strike will be denied, and Plaintiffs' Supplemental Response and attached affidavit will be accepted.

**Defendants' Motion for Summary Judgment Will be Granted in Part and Denied in Part**

"Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[33] In applying that standard, a court views the factual record and any reasonable inferences therefrom in the

---

[29] Plaintiffs' Supplemental Response to Defendants Ruggles' and Zion Canyon Trail Rides at Jacob's Ranch, LLC's Motion for Summary Judgment on All Remaining Issues.

[30] Plaintiff's Response to Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC Motion to Strike Docket Document Nos. 70 and 70-1 at 2.

[31] Defendants' Supplemental Reply Memorandum Supporting Motion for Summary Judgment by Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC on All Remaining Issues, docket no. 78, filed November 29, 2021.

[32] *See Ute Indian Tribe*, 2019 WL 1931713, at *6.

[33] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting Fed. R. Civ. P. 56(c)).

8

light most favorable to the nonmoving party.[34] There is a genuine dispute of material fact if, based on the record as a whole, a reasonable factfinder could find in favor of the nonmoving party.[35]

A reasonable factfinder could find that Defendants were grossly negligent. Therefore, summary judgment will be denied on that count. However, a reasonable factfinder could not find Defendants committed intentional infliction of emotional distress. Therefore, summary judgment will be granted on that count.

**A Reasonable Factfinder Could Conclude Defendants Were Grossly Negligent**

The Prior Ruling identified two pieces of evidence Plaintiffs submitted which, if believed by a jury, could support a finding of gross negligence. First, Plaintiffs submitted evidence that helmets were not offered. Second, Plaintiffs submitted evidence that Clay Doe encouraged the horses to go faster at one point, even though the horses carried inexperienced riders.

"In Utah, gross negligence is 'the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result.'"[36] Under Utah law, resolution of a gross negligence claim is typically within the province of the factfinder.[37] Summary judgment is only appropriate on a gross negligence claim when "reasonable minds could reach but one conclusion" as to whether a defendant observed even slight care.[38]

---

[34] *Adler*, 144 F.3d at 670.

[35] *See Finlinson v. Millard Cty.*, 455 F. Supp. 3d 1232, 1238 (D. Utah 2020).

[36] *Penunuri v. Sundance Partners, Ltd.*, 423 P.3d 1150, 1159 (Utah 2017).

[37] *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1130 (10th Cir. 2009)

[38] *Penunuri*, 423 P.3d at 1159.

After submitting multiple sets of affidavits alongside a renewed motion for summary judgment, Moving Defendants argue they have established that no reasonable fact finder could find helmets were not offered or the horses were encouraged to go faster. But the new affidavits only set up genuine issues of material fact, asking the court to resolve disputed questions of fact or credibility. Those questions are more properly addressed to the factfinder. Because there is sufficient evidence for a factfinder to conclude helmets were not offered to the group or that the horses were encouraged to go faster, and these acts may have caused M.N.'s injuries, summary judgment will be denied.

### (1) There is Sufficient Evidence for a Factfinder to Conclude Helmets were not Offered to the Group

A reasonable factfinder could also conclude that Plaintiffs were not offered helmets by Moving Defendants. Plaintiffs have submitted affidavits by both Supnet[39] and a third-party present on the trail ride that day, Mike Pelley[40], that they did not observe helmets being offered to the group. Moving Defendants counters with affidavits from Jack Ruggles[41], Sheryl Mintz (who was a wrangler on the day of the incident at question)[42], and Dr. Fred Schwendeman, another third-party on the trail ride[43], that they observed helmets *were* made available to all

---

[39] Affidavit of Lenore Supnet, docket no. 68-1, filed October 14, 2021.

[40] Affidavit of Mike Pelley, docket no. 70-1, filed October 28, 2021.

[41] Declaration of Jack Ruggles in Support of Motion for Summary Judgment by Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC on All Remaining Issues, docket no. 64, filed September 16, 2021.

[42] Declaration of Sheryl Mintz in Support of Motion for Summary Judgment by Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC on All Remaining Issues, docket no. 66, filed September 16, 2021.

[43] Declaration of Dr. Fred Schwendeman in Support of Motion for Summary Judgment by Defendants Jack Ruggles, Jane Doe Ruggles, and Zion Canyon Trail Rides at Jacob's Ranch, LLC on All Remaining Issues, docket no. 67, filed September 16, 2021.

members of the ride. It is the province of the factfinder, not a court ruling on a motion for summary judgment, to resolve competing and contradictory pieces of evidence.

Defendants argue that even taking Plaintiffs' proffered affidavits as true, no factfinder could conclude that helmets were not offered to the group.[44] They argue the witnesses cannot testify that no one received a helmet, just that they did not personally observe any helmets being offered. But a reasonable factfinder could infer from Supnet and Pelley's affidavits that no helmets were offered to the group. Taking all inferences in the light most favorable to Plaintiffs, a reasonable factfinder could find that helmets were not offered to the group.

Defendants also suggest that because Plaintiffs signed the Release, which contains a clause agreeing that the signer had been offered a helmet, no factfinder could conclude that Plaintiffs were not offered helmets.[45] While that clause may be evidence that Plaintiffs were offered helmets and may be relevant in evaluating an assumption of risk defense, it is not dispositive of helmets being actually provided. Resolution of such a question is within the province of the factfinder.

Moving Defendants also argue that any actions in failing to offer helmets were "at most" negligent, not grossly negligent.[46] The Prior Ruling concluded that a factfinder could find failure to offer helmets was grossly negligent. Moving Defendants have not offered any contrary case law. A reasonable factfinder could conclude a failure to offer helmets on a horseback ride constituted the failure to observe even slight care.

Therefore, a reasonable factfinder could conclude that Plaintiffs were not offered helmets, and such a fact-finding could constitute gross negligence.

---

[44] Motion at 11-12.

[45] *Id.* at 12-13.

[46] Motion at 11.

### (2) There is Sufficient Evidence for a Factfinder to Conclude that Clay Doe Told the Riders to Quicken the Pace.

There is sufficient evidence that Clay Doe may have told the riders to "quicken the pace," and that statement could support a claim for gross negligence. Plaintiffs have submitted an affidavit by Supnet that Clay Doe instructed the riders to quicken the pace. Supnet states in her affidavit that she heard Clay Doe make the statement, temporarily left M.N., and then returned to find M.N. fallen and injured on the ground.[47] Defendants argue that this evidence is insufficient to show that the statement to "quicken the pace" was the but for cause of M.N.'s injuries.[48] But in a motion for summary judgment, a court should make all inferences in favor of the non-moving party.[49] A reasonable factfinder could infer from Supnet's affidavit that Clay Doe's statement was the but for cause of M.N.'s injury, and led to M.N.'s horse accelerating, M.N. falling off her horse, and M.N.'s injury.

Moving Defendants further argue that Clay Doe was an independent contractor, and therefore, Moving Defendants cannot be liable under this theory.[50] If Clay Doe was an independent contractor, it is possible that Moving Defendants would not be liable for his actions. The status of Clay Doe as an independent contractor depends on many facts.[51] However, resolution of this question would have no effect on the Motion for Summary Judgment because other actions by Moving Defendants, such as the alleged failure to offer helmets, could support a

---

[47] Affidavit of Lenore Supnet, docket no. 68-1, filed October 14, 2021, at 4.

[48] Motion at 13.

[49] *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984).

[50] Motion at 14.

[51] The allegation in the Amended Complaint that Defendant Jack ("Pappy") Ruggles and Defendant Jacobs Ranch stated Defendant Joshua Ruggles was acting as an independent contractor is, like the Moving Defendants' affidavits, not conclusive of independent contractor status. Amended Complaint at 3.

finding of gross negligence. Therefore, whether Clay Doe was an independent contractor will not be resolved at this time.

### (3) Plaintiffs' affidavits are not "self-serving" and are proper to oppose summary judgment.

Defendants additionally argue that the affidavits Plaintiffs submit are "self-serving" and are thus insufficient to oppose summary judgment.[52] Their focus on whether the affidavits are self-serving is misplaced. "[V]irtually any party's testimony can be considered 'self-serving,' and self-serving testimony is competent to oppose summary judgment."[53] "So long as an affidavit is based upon personal knowledge and sets forth facts that would be admissible in evidence, it is legally competent to oppose summary judgment, irrespective of its self-serving nature."[54] The affidavits Plaintiffs have submitted are based in key part on the declarant's first-hand knowledge and observations, and are thus sufficient to oppose summary judgment.

**Assumption of Risk Does Not Bar Plaintiffs' Negligence Claims**

Defendants initially argue Plaintiffs assumed the risk of any harm, based on the Release, the inherent risks of horseback riding, and Plaintiffs' knowing disregard of those risks.[55] To the extent an assumption of the risk argument is relevant here, it will be a question for the factfinder to consider, preventing summary judgment on this issue.

There are three types of assumption of risk in Utah: primary express, primary implied, and secondary.[56]

---

[52] *Id*. at 10-11.

[53] *Greer v. City of Wichita, Kansas*, 943 F.3d 1320, 1325 (10th Cir. 2019).

[54] *Janny v. Gamez*, 8 F.4th 883, 900 (10th Cir. 2021) (quoting *Speidell v. United States ex rel. IRS*, 978 F.3d 731, 740 (10th Cir. 2020)).

[55] Motion at 16-17.

[56] *Rutherford v. Talisker Canyons Fin., Co., LLC*, 445 P.3d 474, 488–89 (Utah 2019).

- Primary express assumption of risk "involves a contractual provision in which a party expressly contracts not to sue for injury or loss which may thereafter be occasioned by the acts of another."[57]

- Primary implied assumption of risk occurs in inherently risky activities, where the defendant as a matter of law owes no duty of care to a plaintiff for certain risks because no amount of care can negate those risks.[58]

- Secondary assumption of risk occurs when a person voluntarily but "unreasonabl[y] encounter[s] . . . a known and appreciated risk."[59] Secondary assumption of risk is treated akin to contributory negligence, and is "no longer recognized in Utah as a total bar to recovery."[60]

While Defendants presumably are arguing that the primary express and primary implied types of assumption of risk are relevant here, their arguments that Plaintiffs knowingly disregarded the risks of horse-riding seems more akin to secondary assumption of risk. Regardless of the type of assumption of risk Defendants are arguing, none would allow summary judgment to be granted on Plaintiffs' claims.

Primary express assumption of risk does not bar Plaintiffs' claims. Primary express assumption of risk allows a party to contract with another that they will not sue in case of injury or loss. This type of assumption of risk is more closely related to contract law, and typically takes the form of preinjury liability releases, such as the Release in this case.[61] The Prior Ruling

---

[57] *Jacobsen Const. Co. v. Structo Lite Eng'g, Inc.*, 619 P.2d 306, 310 (Utah 1980).

[58] *Rutherford*, 445 P.3d at 489.

[59] *Id.* (quoting *Moore v. Burton Lumber & Hardware Co.*, 631 P.2d 865, 870 (Utah 1981)) (alterations and omission in original).

[60] *Hale v. Beckstead*, 116 P.3d 263, 268 (Utah 2005).

[61] *See Rutherford*, 445 P.3d at 489.

14

held that the Release does not bar Plaintiffs' claims for gross negligence. The Release shows that Plaintiffs only agreed to assume those "risks, conditions, & dangers [which] are inherent" to horseback riding. As discussed below, the negligence Defendants are accused of is not the type "inherent" to horseback riding. Accordingly, primary express assumption of risk does not bar Plaintiffs' claims on this record.

Primary implied assumption of risk does not bar Plaintiffs' claims. Primary implied assumption of risk only applies to "inherently risky" activities. In order for primary implied assumption of risk to bar a plaintiff's claims, the injury must have resulted from a risk "inherent" to an activity, and be one that a defendant cannot eliminate through imposition of reasonable care.[62] Utah's Equine and Livestock Activities Act (the "Act")[63] has essentially codified this doctrine as it relates to horse-related injuries.[64] Both the Act and the doctrine of primary implied assumption of risk distinguish between injuries resulting from the inherent risks of the relevant activity and injuries resulting from negligent behavior. Inherent risks of horseback riding may include a horse's propensity to bolt when startled or other unpredictable behavior.[65] It may also refer to a rider's failure to control the animal or not acting within one's ability.[66] If an injury "was caused by an unnecessary hazard that could have been eliminated by the use of ordinary care, such a hazard is not . . . an inherent risk" of an inherently risky activity.[67] M.N.'s injury was alleged to have been caused by the grossly negligent behavior of Defendants in failing to

---

[62] *Id.*

[63] Utah Code Ann. § 78B-4-202(2).

[64] *See Feldman v. Salt Lake City Corp.*, 484 P.3d 1134, 1145 (Utah 2021) (discussing how the Utah legislature codified primary implied assumption of risk in the context of recreational park related injuries).

[65] *See Penunuri v. Sundance Partners, Ltd.*, 301 P.3d 984, 989 (Utah 2013).

[66] Utah Code Ann. § 78B-4-201(5).

[67] *See Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1047 (Utah 1991) (discussing primary implied assumption of risk in the context of ski resorts).

offer M.N. a helmet and in urging the horses to speed up. These actions are not unavoidable risks – these risks could be eliminated by use of reasonable care. Whether primary implied assumption of risk could bar Plaintiffs' claims depends on the factfinder's conclusions as to what caused the injury. The disputed factual circumstances surrounding M.N.'s injury means that this question is not amenable to resolution on summary judgment. Therefore, primary implied assumption of risk would not bar M.N.'s claims at this stage.

Secondary assumption of risk does not bar Plaintiffs' claims. Secondary assumption of risk, "the unreasonable encountering of a known and appreciated risk," is more properly viewed as an "aspect of contributory negligence."[68] Contributory negligence is not a complete bar to recovery, but rather involves the apportionment of fault. Once the combined negligence of plaintiff and defendant has been established, evaluation of a comparative or contributory negligence defense is within the province of the factfinder.[69] There are genuine issues of material fact regarding both Defendants' and Plaintiffs' alleged negligence.[70] Therefore, it will fall to the fact finder to apportion fault in this case, and summary judgment based on secondary assumption of risk will not be granted.

### The Prior Ruling Granted Summary Judgment on the Negligent Infliction of Emotional Distress Claim

Moving Defendants argue that summary judgment should be granted on the negligent infliction of emotional distress claim. The Prior Ruling already granted summary judgment on that claim, ruling that a negligent infliction of emotional distress claim was barred by the Release. Therefore, this argument is moot.

---

[68] *Moore*, 631 P.2d at 870.

[69] See *Acculog, Inc. v. Peterson*, 692 P.2d 728, 730 (Utah 1984).

[70] See *Mason v. Brigham Young Univ.*, No. 2:06-CV-826 TS, 2008 WL 312953, at *2 (D. Utah Feb. 1, 2008).

## Summary Judgment Will be Granted on the
## Intentional Infliction of Emotional Distress Claim

Moving Defendants also request summary judgment on Plaintiffs' intentional infliction of emotional distress claim ("IIED"). As Defendants correctly point out, the Prior Ruling did not rule on whether sufficient evidence had been presented to support an IIED claim, but only concluded that an IIED claim was not barred by the Release.

To establish a claim for IIED under Utah law, Plaintiffs must prove that (1) Defendants' conduct was outrageous and intolerable; (2) that Defendants intended to cause or acted in reckless disregard of the likelihood of causing emotional distress; (3) that Plaintiffs suffered emotional distress; and (4) that distress was proximately caused by Defendants.[71] "[T]o to sustain a claim for intentional infliction of emotional distress, a defendant's alleged conduct must be more than unreasonable, unkind, or unfair[;] it must instead be so severe as to 'evoke outrage or revulsion.'"[72] Conduct is not outrageous merely because it is "tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal." Rather, Utah courts have described the type of conduct required to sustain a claim for IIED as "extraordinary vile conduct, conduct that is atrocious, and utterly intolerable in a civilized society."[73] The Tenth Circuit has similarly described Utah law as setting "high standards" to establish a claim for IIED.[74]

---

[71] *Retherford v. AT & T Commc'ns of Mountain States, Inc.*, 844 P.2d 949, 971 (Utah 1992), *holding modified by Graham v. Albertson's LLC*, 462 P.3d 367 (Utah 2020).

[72] *Davidson v. Baird*, 438 P.3d 928, 945 (Utah App. 2019), *cert. denied*, 440 P.3d 692 (Utah 2019) (quoting *Cabaness v. Thomas*, 232 P.3d 486 (Utah 2010), *abrogated on other grounds by Gregory & Swapp, PLLC v. Kranendonk*, 424 P.3d 897 (Utah 2018)) (internal quotation marks omitted).

[73] *Chard v. Chard*, 456 P.3d 776, 791 (Utah App. 2019) (quoting *Retherford*, 844 P.2d at 977 n.19).

[74] *Hogan v. Winder*, 762 F.3d 1096, 1112 (10th Cir. 2014).

No reasonable factfinder could find that the conduct alleged by Plaintiffs rises to the level of outrage. Defendants' alleged conduct in failing to provide a helmet and encouraging inexperienced riders to "quicken the pace" could evidence Defendants failed to observe even slight care, which would be sufficient to state a claim for gross negligence.[75] But as a matter of law, the alleged conduct does not constitute the extreme and outrageous conduct which Utah courts have required to establish a claim for IIED.

## CONCLUSION AND ORDER

For the foregoing reasons, Moving Defendant's Motion[76] is GRANTED IN PART and DENIED IN PART. Summary Judgment will be entered on the claim for Intentional Infliction of Emotional Distress. Summary Judgment will not be entered on the claim for gross negligence. Additionally, Defendants' Motion to Strike[77] is DENIED.

Dated January 7, 2022.

BY THE COURT:

David Nuffer
United States District Judge

---

[75] *Penunuri*, 423 P.3d at 1159.

[76] Docket no. 63, filed September 16, 2021.

[77] Docket no. 73, filed November 3, 2021.